# Exhibit 2



Slip Copy, 2011 WL 3203117 (S.D.Cal.)
**(Cite as: 2011 WL 3203117 (S.D.Cal.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
PERFECT 10, INC., a California Corporation, Plaintiff,
v.
MEGAUPLOAD LIMITED, a Hong Kong corporation, Kim Schultz, an individual; and Does 1 through 100, inclusive, Defendants.

No. 11cv0191–IEG (BLM).
July 27, 2011.

Eric Benink, Krause Kalfayan Benink and Slavens, San Diego, CA, for Plaintiff.

Venkat Balasubramani, Focal PLLC, Seattle, WA, Richard P. Sybert, Yuo–Fong C. Amato, Gordon & Rees LLP, San Diego, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MEGAUPLOAD'S MOTION TO DISMISS**
IRMA E. GONZALEZ, Chief Judge.

**\*1** This is an intellectual property case. Plaintiff Perfect 10, Inc. (Perfect 10) has asserted federal copyright and trademark claims, along with related state law claims, against Defendants Megaupload Limited (Megaupload) and its founder, Kim Schultz. Perfect 10 alleges Megaupload stores billions of dollars of "pirated" media on its servers, including thousands of Perfect 10 images and video. Presently before the Court is Defendant Megaupload's motion to dismiss. For the reason stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Megaupload's motion.

**BACKGROUND**

Plaintiff Perfect 10, Inc. creates and sells adult entertainment products, including photographs, magazines, videos, and other media. [Compl. ¶ 12.] Formerly the publisher of the well-known magazine PERFECT 10, Perfect 10 now distributes its products primarily through its website, perfect10.com. [See id. ¶¶ 13–16.] To access content on perfect10.com, cus-

tomers log in using a user name and password, which are obtained by paying a a monthly fee. [Id. ¶ 15.] Perfect 10 earns most of its revenue from sales of memberships on perfect10.com.

Because its business depends almost entirely on its intellectual property rights, [Id. ¶ 21], Perfect 10 has taken extensive steps to protect those rights. Perfect 10 owns thousands of copyrighted images, a substantial number of which are registered with the U.S. Copyright Office. [Id. ¶ 17.] Perfect 10 also owns a family of trademarks, three of which have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. [Id. ¶ 18.] Having spent millions of dollars promoting its trademarks, along with the products and services its trademarks represent, Perfect 10 has accumulated valuable goodwill. [Id.] Perfect 10 has also secured rights of publicity from some of its models. [Id. ¶ 20.]

Defendant Megaupload characterizes itself as a "file storage" company. [See Def.'s Mot. at 2.] Megaupload operates various websites, including megaupload.com, megaporn.com, megarotic.com, megavideo.com, and megaclick.com, among others. [Compl. ¶ 22.] Through its websites, Megaupload allows its users to upload files. What's problematic from Perfect 10's perspective is that users frequently upload "pirated" content to Megaupload's servers, which anyone may download with ease. [See id.]

The website megaupload.com is illustrative. [See id.] After a file is uploaded to megaupload.com, Megaupload creates a unique Uniform Resource Locator ("URL"). [Id.] The URL is the address of the file on the internet. [See id.] Anyone with the URL can download the file from Megaupload's servers. [Id.] Megaupload and its users disseminate URLs for various files throughout the internet. [Id.] In order to view, copy, or download such files from the Megaupload websites without waiting, users must pay a membership fee. [Id.] It is not clear from Perfect 10's complaint whether Megaupload's other websites work in precisely the same fashion as megaupload.com. [See generally Compl.]

**\*2** This much is clear: Megaupload allegedly stores billions of dollars of "pirated" full-length mov-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3203117 (S.D.Cal.)
**(Cite as: 2011 WL 3203117 (S.D.Cal.))**

ies, songs, software, and images on its servers. [*Id.* ¶ 22.] Megaupload apparently depends on, and provides substantial payouts to, affiliate websites who catalogue the URLs providing access to the mass of "pirated" content on Megaupload's servers. [*Id.* ¶ 26.] For example, at the affiliate search engine megaupload.net, users who perform a search are directed to Megaupload's website and offered the opportunity to purchase a membership. [*Id.*]

Megaupload also encourages its users to upload materials through its "Rewards Programs." Megavideo.com and megaporn.com have a rewards program called "Megaporn Rewards." [*Id.* ¶ 24.] Megaupload.com also has a rewards program, which it runs in a similar fashion, stating:

> The more downloads your files get, the more you can earn through our Megaupload Rewards program. Every qualifying download of one of your files will earn you a reward point. When you have reached a certain number of points, you can redeem them for premium status or even cash. There is no limit! And even better: The more downloads your files get, the more you can earn through our Megaupload Rewards program.

[*Id.*] Megaupload offers $10,000 for 5,000,000 reward points. [*Id.*]

Among the materials available on Megaupload's servers are thousands of Perfect 10 images, videos, and other materials. [*Id.* ¶ 28.] The copyrighted nature of the Perfect 10 materials is obvious, as the materials contain copyright notices and are labeled "Perfect 10" or Perfect–10. [*Id.*] Between July 23 and August 8, 2010, Perfect 10 allegedly sent Megaupload 22 notices of infringement.[FN1] [*Id.*] Most of the infringing works identified in the notices have not been removed. [*Id.*]

> FN1. As discussed below, of the 22 notices, 19 related to content unrelated to Perfect 10. [*See* van der Kolk Decl., Exs. 1–19.] Of the remaining three notices, two allege violations of Perfect 10's rights of publicity and one alleges copyright infringement. [*See* van der Kolk Decl., Exs. 20–22.]

In early 2011, Perfect 10 filed a complaint in this Court. [Doc. No. 1.] In its complaint, Perfect 10 as-serts federal copyright and trademark claims, as well as state law unfair competition and right of publicity claims. [*Id.*] Presently before the Court is Defendant Megaupload's motion to dismiss. [Doc. No. 7.] The motion has been fully briefed and is suitable for dis-position without oral argument pursuant to Civil Local Rule 7.1(d).

### *DISCUSSION*
### I. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a) (2009). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed.R.Civ.P. 12(b)(6); *Navarro v. Block,* 250 F.3d 729, 731 (9th Cir.2001). The court must accept all factual allega-tions in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mu-tual Ins. Co. .,* 80 F.3d 336, 337–38 (9th Cir.1996).

**\*3** To avoid a Rule 12(b)(6) dismissal, a com-plaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* ⸺ U.S. ⸺, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556.)

However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). A court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal,* ⸺ U.S. ⸺, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In spite of the defer-ence the court is bound to pay to the plaintiff's allega-tions, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the ... laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3203117 (S.D.Cal.)
**(Cite as: 2011 WL 3203117 (S.D.Cal.))**

*Carpenters, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).*

## II. Analysis

### A. Exhibits to the Van der Kolk Declaration

In support of its motion to dismiss, Megaupload submitted a declaration by Bram van der Kolk accompanied by 22 exhibits. The parties dispute whether the Court may consider such materials in ruling on the motion.[FN2]

> **FN2.** Along with its response in opposition, Perfect 10 submitted a declaration by Dr. Norman Zada accompanied by 4 exhibits. Because the van der Kolk Declaration, the Zada Declaration, and the exhibits to the Zada Declaration would not meaningfully affect the Court's resolution of the present motion in any event, the Court does not need to decide whether review of those materials is appropriate.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Swartz v. KPMG LLP, 476 U.S. 756, 763 (9th Cir.2007)* (citation omitted). "However, in order to prevent plaintiffs from surviving a *Rule 12(b)(6)* motion by deliberately omitting documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.* (internal quotation marks and citations omitted).

Perfect 10 does not challenge the purpose for which Megaupload submitted the 22 exhibits to the van der Kolk declaration. But Perfect 10 does take issue with Megaupload's suggestion that the 22 exhibits are authentic copies of the the 22 takedown notices referenced in Perfect 10's complaint. [*See* Pl.'s Resp. at 3.] Perfect 10 acknowledges the exhibits are cover pages of the takedown notices but maintains the exhibits omit more than 783 pages of infringing URLs. [*See id.*]

Based on the foregoing, the Court concludes it

may consider the 22 exhibits to the van der Kolk declaration, but only to the extent their authenticity is unquestioned-as cover pages to the takedown notices. With that in mind, the Court proceeds to the substance of Megaupload's motion to dismiss.

### B. Copyright Claims

#### 1. Direct Infringement

**\*4** "To establish a prima facie case of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act." *UMG Recordings, Inc. v. Augusto, 628 F.3d 1175, 1178 (9th Cir.2011).* Among the exclusive rights granted to copyright owners by the Copyright Act are the right to reproduction, the right to display, and the right to distribution. 17 U.S.C. § 106(1), (3), and (5).

"While the Copyright Act does not require that the infringer know he is infringing or that his conduct amount[s] to a willful violation of the copyright owner's rights, it nonetheless requires *conduct* ...." *CoStar Group, Inc. v. LoopNet, Inc., 373 F.3d 544, 549 (4th Cir.2004).* To establish direct liability for copyright infringement, therefore, "something more must be shown than mere ownership of a machine used by others to make copies." *Id. at 550.* A line of cases beginning with *Religious Technology Center v. Netcom On–Line Communication Services, 907 F.Supp. 1361 (N.D.Cal.1995)* (*"Netcom"* ), holds that an important element of direct liability is volitional conduct. *Arista Records LLC v. Usenet.com, Inc., 633 F.Supp.2d 124, 147 (S.D.N.Y.2009)* (citing *Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 131 (2nd Cir.2008)).* The element of volitional conduct applies to all exclusive rights under the Copyright Act. *Id.; see also Cartoon Network, 536 F.3d at 131* (holding volitional conduct required for direct infringement of reproduction right); *Playboy Enterprises, Inc. v. Russ Hardenbaugh, Inc., 982 F.Supp. 503, 513 (N.D.Ohio 1997)* (holding volitional conduct required for direct infringement of distribution and display rights); *Netcom, 907 F.Supp. at 1370* (holding volitional conduct required for direct infringement of reproduction and display rights).

In this case, Megaupload does not dispute Perfect 10's ownership of valid copyrights or Perfect 10's

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3203117 (S.D.Cal.)
**(Cite as: 2011 WL 3203117 (S.D.Cal.))**

allegation that rampant infringement occurs on Megaupload's servers. [*See* Def.'s Mot. at 4–5.] Instead, Megaupload argues Perfect 10 has not alleged Megaupload engaged in volitional conduct sufficient to hold it liable for direct infringement.[FN3] [*See id.*] To the extent third parties uploaded copyrighted materials to Megaupload's servers, Megaupload maintains it is merely a passive conduit under *Netcom* and its progeny. [*See id.*]

> FN3. Megaupload does not allege Megaupload itself uploaded any Perfect 10 materials. The Court agrees. Perfect 10 does not plausibly allege Megaupload itself uploaded any Perfect 10 materials. [*See generally* Compl.] Instead, Perfect 10 speculates that "[i]t is impossible to fathom how Mega became one of the busiest websites in the world without it at least initially directly uploading the infringing materials." [Pl.'s Resp. at 11.]

Drawing all reasonable inferences in Perfect 10's favor, Megaupload serves as more than a passive conduit, and more than a mere "file storage" company: it has created distinct websites, presumably in an effort to streamline users' access to different types of media (e.g., megaporn.com, megavideo.com) [*see* Compl. ¶ 22]; it encourages and, in some cases pays, its users to upload vast amounts of popular media through its Rewards Programs [*see id.* ¶ 24]; it disseminates URLs for various files throughout the internet [*see id.* ¶ 22]; it provides payouts to affiliate websites who maintain a catalogue of all available files [*see id.*]; and last, at a minimum, it is plausibly aware of the ongoing, rampant infringement taking place on its websites [*see infra.* Part II.B.2]. Taken together, Perfect 10 has adequately alleged Megaupload has engaged in volitional conduct sufficient to hold it liable for direct infringement. *See Arista Records LLC v. Usenet.com, Inc.,* 633 F.Supp.2d 124, 147 (S.D.N.Y.2009) (holding defendants engaged in volitional conduct where, among other things, defendants took active measures to create servers dedicated to mp3 files and defendants were aware that infringing music files were among the most popular on their service); *Capitol Records, Inc. v. MP3tunes, LLC,* 2009 WL 3364036, at *3 (S.D.N.Y. Oct.16, 2009) (holding allegations plausibly suggested volitional conduct where defendants operated a music storage locker along with an affili-

ated website that organized links to music files, defendants added links to the affiliated website as users added new music to lockers, and defendants were aware that many of the files were infringing). Accordingly, the Court **DENIES** Megaupload's motion to dismiss as it relates to direct infringement.

**2. Contributory Infringement**

*5 "[A] defendant is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and (2) induces, causes, or materially contributes to the infringing conduct." *Perfect 10 v. Visa Int'l. Serv. Assoc.,* 494 F.3d 788, 795 (9th Cir.2007) (internal quotation marks and citation omitted). A defendant is not a contributory infringer in the absence of direct infringement by a third party. *See Perfect 10, Inc. v. Amazon, Inc.,* 508 F.3d 1146, 1169 (9th Cir.2007). In the internet context, "a computer system operator can be held contributorily liable if it has actual knowledge that specific infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." *Id.* at 1172.

As a threshold matter, Megaupload suggests Perfect 10 fails to allege direct infringement by a third party, asserting that "Perfect 10 does not allege any specific items that were uploaded by Mega's users ...." [Def.'s Mot. at 7.] Megaupload's assertion may be technically correct, but it is also misleading. Perfect 10 alleges it sent Megaupload 22 takedown notices regarding infringement. [Compl. ¶ 30.] And while Perfect 10 did not attach the 22 takedown notices to its complaint or explain their content, it references specific items in a cover page to at least one of the notices. [*See* van der Kolk Decl., Ex. 22.] Drawing all reasonable inferences in Perfect 10's favor—including Megaupload's election to submit incomplete copies of the 22 takedown notices—the Court concludes that Perfect 10 has satisfactorily alleged direct infringement by a third party.

Megaupload argues primarily that Perfect 10 fails to allege specific knowledge of infringement. [*See* Def.'s Mot. at 6.] In doing so, Megaupload makes several related contentions regarding the 22 takedown notices it received from Perfect 10: that just one of the takedown notices relates to Perfect 10 materials; that the takedown notice is deficient; that the DMCA does not require Megaupload to respond

Slip Copy, 2011 WL 3203117 (S.D.Cal.)
**(Cite as: 2011 WL 3203117 (S.D.Cal.))**

to a deficient takedown notice; that, in any event, Perfect 10 does not allege Megaupload failed to respond adequately to the notice; and that Megaupload did, in fact, respond adequately to the notice. [*See* Def.'s Mot. at 7; Def.'s Reply at 4–5.] The Court addresses these contentions in turn.

Megaupload is correct that just one of the Perfect 10's 22 takedown notices actually relates to Perfect 10 materials. But even if the Court were able to determine sufficiency of the takedown notice at the motion to dismiss stage, Megaupload elected to provide the Court with an incomplete copy of that notice. [*See* van der Kolk Decl., Ex. 22.] Accordingly, the Court declines Megaupload's invitation to evaluate the sufficiency of the takedown notice. [FN4] And contrary to Megaupload's assertion, Perfect does allege Megaupload failed to respond adequately to the notice. [*See* Compl. ¶ 30 ("As far as Perfect 10 can determine, most of these infringing works have not been removed.").] To the extent Megupload disputes Perfect 10's allegation, it should deny the allegation in its answer. *See* Fed.R.Civ.P. 8(b).

> FN4. At any rate, Megaupload does not squarely address the deficiencies of the notice. Although Megaupload draws the Court's attention to two requirements of a DMCA-compliant takedown notice—that the notice must contain a statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed—Megaupload does not contend Perfect 10 failed to adhere to those requirements. [*See* Def.'s Mot. at 7 & n. 4.] Instead, Megaupload appears to rely on a separate requirement for which it has failed to provide any legal or factual support: that Perfect 10 failed to alleged the identity the third party infringer in its complaint. [*Id.* at 7.]

**\*6** There is some doubt among courts as to whether a takedown notice automatically implies knowledge. *See* Flava Works, Inc. v. Gunter, 2011 WL 1791557, at \*3 (N.D.Ill. May 10, 2011). However, in this case, there are additional allegations in Perfect 10's complaint that give rise to a plausible inference of knowledge, several of which the Court

has already highlighted in its discussion of direct infringement. [*See supra* II.B.1.] Tellingly, in its motion to dismiss, Megaupload does not dispute Perfect 10's allegation that it induces, causes, or materially contributes to infringing conduct.[FN5] Nor could it, given the allegations that Megaupload encourages, and in some cases, pays its users to upload vast amounts of popular media through its Rewards Programs, disseminates URLs that provide access to such media, and has provided payouts to affiliates who catalogue the URLs for all available media. [*See* Compl. ¶¶ 22, 24.] Under the circumstances of this case, if Megaupload lacks knowledge of infringing activity, Plaintiff's allegations suggest such a lack of knowledge is willful. The Court concludes Perfect 10 has satisfactorily pleaded specific knowledge of contributory infringement, and therefore **DENIES** Megaupload's motion to dismiss that claim.

> FN5. Megaupload addresses this aspect of contributory infringement for the first time in its reply. [*See* Def.'s Reply at 5–7.] In doing so, Megaupload relies primarily on *Viacom Int'l, Inc. v. YouTube, Inc.,* 718 F.Supp.2d 514, 526 (S.D.N.Y.2009), where the court granted summary judgment to defendants on the basis of the DMCA. Megaupload has not raised a DMCA defense at this stage, [*see generally* Def.'s Mot.], and Perfect 10 alleges that none of Megaupload's websites identifies the name, address, phone number, and electronic mail address of a designated DMCA agent as required by 17 U.S.C. § 512(c)(2). [Compl. ¶ 27.]

**3. Vicarious Infringement**

"To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n ("Visa"),* 494 F.3d 788, 802 (9th Cir.2007).

Megaupload contends Perfect 10 has not alleged Megaupload has the right and ability to supervise the infringing conduct. [*See* Def.'s Mot. at 8.] Perfect 10 responds that like the defendants in *A & M Records v. Napster, Inc.,* 239 F.3d 1004, 1023–24 (9th Cir.2001), Megaupload has the ability to supervise infringing conduct by terminating users' access to Megaupload's servers. [*See* Pl.'s Resp. at 15.]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3203117 (S.D.Cal.)
**(Cite as: 2011 WL 3203117 (S.D.Cal.))**

Defendants in *Napster* had the ability to terminate users' access because Napster was a closed system requiring user registration. *Napster,* 239 F.3d at 1023–24. Here, Perfect 10 does not allege Megaupload has a closed system requiring user registration or explain how files are uploaded. [*See generally* Compl.] It alleges only that files may be downloaded by anyone: after a file is uploaded, Megaupload creates a URL that enables "anyone with the URL to access, copy, and download the intellectual property from Megaupload's servers." [*Id.* ¶ 22.] Accordingly, Perfect 10 does not allege facts suggesting Megaupload has the right and ability to supervise infringing conduct. [*See generally id.*] Perfect 10 does allege that Megaupload possesses the right and ability to supervise its affiliates. [*See* Compl. ¶ 38.] But even if true, the right and ability to supervise affiliates does not encompass the right and ability to supervise the infringing conduct of third party users. *Visa,* 494 F.3d at 805 ("For vicarious liability to attach ... the defendant must have the right and ability to *supervise* and *control* the infringement, not just affect it ...."). Based on the foregoing, Perfect 10 has not alleged facts giving rise to a claim for vicarious infringement. The Court **DISMISSES WITHOUT PREJUDICE** Perfect 10's vicarious infringement claim.

**B. Trademark Claims**

**\*7** Megaupload contends that Perfect 10's trademark claims "are merely copyright claims disguised as trademark claims," and are precluded under the Supreme Court's decision in *Dastar Corporation v. Twentieth Century Fox Film Corporation,* 539 U.S. 23, 25, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003). [Def.'s Mot. at 10.] In support of its position, Megaupload cites two cases applying *Dastar, Fractional Villas, Inc. v. Tahoe Clubhouse,* 2009 WL 160932 (S.D.Cal. Jan.22, 2009), and *Bach v. Forever Living Products U.S., Inc.,* 473 F.Supp.2d 1110 (W.D.Wash.2007).

In *Dastar,* the Supreme Court evaluated the question of whether the Lanham Act prevents "the unaccredited copying of a work." 539 U.S. 23, 25, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003). Having located a creative work in the public domain, defendants copied it, made a few modifications, and produced a series of videotapes under their own name. *Id.* at 31. The Court held that, under the Lanham Act,

the phrase "origin of goods" refers to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37.

In *Fractional Villas, Inc. v. Tahoe Clubhouse,* 2009 WL 160932, at *1 (S.D.Cal. Jan.22, 2009), defendants' website copied extensive portions of plaintiffs' website verbatim without permission. Like the plaintiffs in *Dastar,* plaintiffs effectively alleged plagiarism. Accordingly, the Court held plaintiffs claims were precluded under *Dastar.*

*Bach v. Forever Living Products U.S., Inc.,* 473 F.Supp.2d 1110 (W.D.Wash.2007), is consistent with *Dastar* and *Fractional Villas,* but reached a different conclusion. Plaintiffs were the creators of the the book *Jonathan Livingston Seagull. Id.* at 1113. Defendants were companies that manufacture and distribute health and beauty products. *Id.* Plaintiffs asserted both copyright and trademark claims against defendants. As to copyright, they alleged defendants used photos and text from *Jonathan Livingston Seagull.* And as to trademark, they alleged defendants falsely represented in commerce that their companies, products, and services were endorsed by or otherwise affiliated with the name, title, and images associated with *Jonathan Livingston Seagull. Id.* at 1114. In support of its trademark claim, Plaintiffs also presented numerous examples of how defendants used the name and title of *Jonathan Livingston Seagull,* as well as the image of a white seagull against a blue background in their written and oral business communications. *Id.* Evaluating the impact of *Dastar* on plaintiff's claims, the Court explained that trademark and copyright law have fundamentally different purposes:

> Trademark law is concerned with the protection of symbols, elements or devices used to identify a product in the marketplace and to prevent confusion as to its source.... In contrast, copyright law protects the artist's right in an abstract design or other creative work. Therefore, trademark law protects the distinctive source-distinguishing mark, while copyright law protects the work as a whole.

**\*8** *Id.* at 1117. The Court explained further that plaintiffs' rights in the name, title, and trademark of *Jonathan Livingston Seagull* were protected under trademark law due to their association with plaintiffs,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3203117 (S.D.Cal.)
**(Cite as: 2011 WL 3203117 (S.D.Cal.))**

whereas the character, photograph and the portions of copyrighted text were protected under copyright because they were the artist's creative work. *Id.* at 1118. Accordingly, the Court held *Dastar* inapplicable because plaintiffs did not seek to use trademark law to prosecute plagiarism of their creative work. *Id.*

In this case, Perfect 10's trademark infringement claims appear to arise largely from the potential for confusion as to the source of Perfect 10's creative works, to which extent the claims are precluded under *Dastar.* Perfect 10 acknowledges as much in its response in opposition: "Although perhaps not explicitly stated, Perfect 10 contends that its marks are used in a manner beyond their appearance on copyrighted works." [*See* Pl.'s Resp. at 15.] The Court agrees with Perfect 10 that its trademark infringement allegations are not "explicitly stated." For instance, the word "confusion" appears nowhere in the complaint. *Compare* [Compl.], *with GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir.2000) ("The likelihood of confusion is the central element of trademark infringement."). To allow Perfect 10 to explicitly state its allegations in an amended complaint, the Court **DISMISSES WITHOUT PREJUDICE** Perfect 10's trademark infringement claims.

Megaupload also suggests Perfect 10's trademark dilution claim is precluded by *Dastar.* However, Megaupload has not cited any cases suggesting why *Dastar* would be applicable in the context of a trademark dilution claim. [*See generally* Def.'s Mot.; Def.'s Reply.] Nor has Megaupload explained how Perfect 10's allegations are insufficient to satisfy the elements of trademark dilution for purposes of defeating a motion to dismiss. [*See generally* Def.'s Mot.; Def.'s Reply.]

"Unlike infringement and unfair competition laws, in a dilution case competition between the parties and a likelihood of confusion are not required to present a claim for relief." *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 873 (9th Cir.1989). To establish a trademark dilution claim, a plaintiff must allege that "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.,* 518 F.3d 628, 634 (9th Cir.2008). Dilution is "the lessen-

ing of the capacity of a famous mark to identify and distinguish goods or services." *Panavision Intern., LP v. Toeppen,* 945 F.Supp. 1296, 1303–04 (C.D.Cal.1996) (internal quotation marks and citation omitted). Tarnishment occurs when "a famous mark is linked to products of poor quality or is portrayed in an unwholesome manner." *Id.* (citation omitted).

**\*9** Perfect 10's allegations suffice to state a claim for trademark dilution. Perfect 10 alleges: that its marks are valuable and well known [Compl. ¶¶ 18–19]; that Megaupload makes use of the marks in commerce [*Id.* ¶ 28]; and that Megaupload, acting through its affiliates, intermingles Perfect 10's high quality images with images of poor quality or of an offensive or illegal nature [*Id.* ¶ 60]. Based on the foregoing, the Court **DENIES** Megaupload's motion to dismiss as it relates to trademark dilution.

**C. Preemption of State Law Claims**

Megaupload maintains each of Perfect 10's state law claims is premised on Megaupload's allegedly improper exploitation of copyrighted material. [*See* Def.'s Mot. at 15–16.] As a consequence, Megaupload contends all of Perfect 10's state law claims are preempted by the Copyright Act. [*Id.*] Perfect 10 disagrees. [*See* Pl.'s Resp. at 18–22.]

The Copyright Act preempts state-created "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301. In accordance with section 301, the Ninth Circuit has adopted a two-part test to determine whether a state law is preempted by the Copyright Act. *See Laws v. Sony Music Entm't, Inc.,* 448 F.3d 1134, 1137–38 (9th Cir.2006). The Court must first determine "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Id.* Assuming it does, the Court must determine "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id.*

**1. Publicity Rights**

The Ninth Circuit has evaluated the question of preemption in the context of state law publicity rights claims on a few occasions. In *Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1005 (9th Cir.2001), defendant Abercrombie & Fitch purchased a photo of

Slip Copy, 2011 WL 3203117 (S.D.Cal.)
**(Cite as: 2011 WL 3203117 (S.D.Cal.))**

plaintiffs, surfers who had competed in a surf championship in Hawaii in 1965. *Id.* at 1000. As part of a surf-themed marketing campaign, Abercrombie published the photograph, but it also identified the plaintiffs by name without their consent and offered for sale the same t-shirts offered by the plaintiffs in the photo. *Id.* Holding plaintiffs' publicity rights claims were not within subject matter of copyright, the Court explained "it is not the publication of the photograph itself, as a creative work of authorship, that is the basis for [plaintiffs'] claims, but rather it is the use of [plaintiffs'] likenesses and their names pictured in the published photograph." *Id.*

The Court reached a different conclusion in *Laws v. Sony Music Entertainment, Inc.,* 448 F.3d 1134, 1136 (9th Cir.2006). There, plaintiff Debra Laws brought suit after Sony used a sample of one of her recordings in a recording by Jennifer Lopez and LL Cool J. *Id.* at 1136. Laws claimed the use of her voice on the Sony recording was a misappropriation of her publicity rights. *Id.* Applying the two-part test for preemption, the Court held the Copyright Act preempted Laws's claims. First, the Court concluded the recordings were within the "subject matter" of copyright: they were original works of authorship fixed in a tangible medium of expression capable of reproduction. *Id.* at 1139. And second, the Court concluded the rights asserted under state law were equivalent to the rights contained in 17 U.S.C. § 106: Laws's claims were based on the premise that Sony reproduced the copyrighted work without her permission. *Id.* at 1145.

**\*10** Similarly, in *Jules Jordan Video, Inc. v. 14492 Canada Inc.,* 617 F.3d 1146, 1149 (9th Cir.2010), plaintiff Ashley Gaspar brought suit after Kaytel Video Distribution copied and sold thirteen copyrighted adult DVDs owned by Gaspar or his company and featuring his performances. Gaspar claimed the use of his name and persona on counterfeit DVDs was a misappropriation of his publicity rights. *Id.* at 1153. The Court applied the same reasoning and arrived at the same conclusion reached in *Laws.* Because the factual basis of Gaspar's claim was the unauthorized reproduction of his performance on the DVDs, his publicity rights claim was preempted. *Id.* at 1154.

In its response in opposition, Perfect 10 maintains that, like the defendant in *Downing,*

Megaupload uses the names of Perfect 10 models to obtain subscribers in ways that go beyond reproduction of copyrighted works, and in ways that are not connected the the models' appearance in such works. [*See* Pl.'s Resp. at 20–21.] According to Perfect 10, Megaupload uses the models' names to drive traffic from its affiliates to its websites. [*See id.*] To underscore the distinction between the rights it is asserting, Perfect 10 points out that in some cases, Megaupload uses the models' names to drive traffic to content entirely unrelated to the copyrighted works.

However, the allegations supporting Perfect 10's reliance on *Downing* are entirely absent from its complaint. [*See generally* Compl.] Acknowledging as much, Perfect 10 asserts it is "prepared to amend the rights of publicity claim to include these more specific allegations if necessary." [Pl.'s Resp. at 21.] Based on the foregoing, the Court **DISMISSES WITHOUT PREJUDICE** Perfect 10's publicity rights claim.

### 2. Unfair Competition

Megaupload contends Perfect 10's unfair competition claim is entirely duplicative of its copyright claim, but does not otherwise challenge the adequacy of Perfect 10's UCL allegations. [*See* Def.'s Mot. at 14–15.] Perfect 10 responds that its UCL claim is distinct from its copyright claim because it is premised on Perfect 10's trademark rights, its publicity rights, and the intellectual property rights of third parties.

Perfect 10 cannot premise its UCL claim on its publicity rights or the intellectual property rights of third parties. The Court has already dismissed Perfect 10's publicity rights claim. And Perfect 10 acknowledges it lacks standing to bring a copyright claim on behalf of third parties. [*See* Pl.'s Resp. at 20.] If Perfect 10 were permitted to proceed on its UCL claim under the theory that Megaupload is exploiting the intellectual property rights of third parties, Perfect 10 "would be litigating a third party copyright claim under the guise of state law." *Sybersound Records, Inc. v. UAV Corp.,* 517 F.3d 1137, 1151 (9th Cir.2008).

However, to the extent Perfect 10's UCL claim is premised on its trademark dilution claim, it contains "the necessary qualitatively different extra element distinguishing it from copyright ... protection."

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3203117 (S.D.Cal.)
**(Cite as: 2011 WL 3203117 (S.D.Cal.))**

*Summit Mach. Tool Mfg. Copr. v. Victor CNC Systems, Inc., 7 F.3d 1434, 1440 (9th Cir.1993).* Because Perfect 10's UCL claim is not preempted by the Copyright Act, the Court **DENIES** Megaupload's motion to dismiss as it relates to that claim.

### CONCLUSION

**\*11** Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Megaupload's motion to dismiss and **ORDERS** as follows:

— Perfect 10's vicarious copyright infringement claim is **DISMISSED WITHOUT PREJUDICE.**

— Perfect 10's trademark infringement claims are **DISMISSED WITHOUT PREJUDICE.**

— Perfect 10's publicity rights claim is **DISMISSED WITHOUT PREJUDICE.**

— Megaupload's motion to dismiss is **DENIED** in all other respects.

If Perfect 10 wishes to file an amended complaint, it must do so within 21 days of the filing of this Order. The amended complaint should only make the revisions discussed above, should be a complete document without reference to any prior pleading, and should not add any new causes of action.

**IT IS SO ORDERED.**

S.D.Cal.,2011.
Perfect 10, Inc. v. Megaupload Ltd.
Slip Copy, 2011 WL 3203117 (S.D.Cal.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.