1   MUNGER, TOLLES & OLSON LLP
    KELLY M. KLAUS (SBN 161091)
2   Kelly.Klaus@mto.com
    355 South Grand Avenue
3   Thirty-Fifth Floor
    Los Angeles, CA  90071-1560
4   Telephone:     (213) 683-9100
    Facsimile:     (213) 687-3702
5
    MUNGER, TOLLES & OLSON LLP
6   JONATHAN H. BLAVIN (SBN 230269)
    Jonathan.Blavin@mto.com
7   560 Mission Street
    Twenty-Seventh Floor
8   San Francisco, CA  94105-2907
    Telephone:     (415) 512-4000
9   Facsimile:     (415) 512-4077

10  Attorneys for Defendant
    UNIVERSAL MUSIC GROUP, INC.
11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14

15

16  MEGAUPLOAD LTD.,                    CASE NO.  C-11-6216 CW (JSC)

17                  Plaintiff,          **DEFENDANT'S OPPOSITION TO
                                        PLAINTIFF'S MOTION FOR LEAVE TO
18  v.                                  TAKE DISCOVERY PRIOR TO FED. R.
                                        CIV. P. 26(f) CONFERENCE**
18  UNIVERSAL MUSIC GROUP, INC.,
                                        Date:     February 2, 2012
19                  Defendant.          Time:     9:00 a.m.
                                        Crtrm:    F (15th Floor)
20                                      Judge:    Hon. Jacqueline Scott Corley
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................3

A.      Universal Music Group.................................................................................3

B.      Megaupload .................................................................................................5

C.      Background Events Regarding the Video......................................................7

D.      Megaupload's Request for Expedited Discovery ...........................................8

III. ARGUMENT ......................................................................................................10

A.      Rule 26(d) Prohibits Expedited Discovery Absent a Showing of "Good Cause" .............10

B.      Megaupload Has Not Demonstrated "Good Cause" Warranting Expedited Discovery .......................................................................................................11

        1.      Megaupload Does Not Need Expedited Discovery to Determine the Identity and Roles of Unnamed Defendants ....................................11

        2.      Megaupload's Purported Need for Expedited Third-Party Discovery Does Not Establish "Good Cause" ....................................14

C.      Megaupload's Request for One-Way Expedited Merits Discovery Will Give It an Unfair Advantage in the Litigation, Prejudice Defendant, and Upset the Orderly Discovery Process Contemplated by Rule 26(f)....................................16

IV. CONCLUSION ...................................................................................................17

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Abrahams v. Young & Rubicam,*
    979 F. Supp. 122 (D. Conn. 1997)..................................................................14

*Am. Legalnet, Inc. v. Davis,*
    673 F. Supp. 2d 1063 (C.D. Cal. 2009) ......................................................10, 11

*Apple Inc. v. Samsung Elecs. Co.,*
    768 F. Supp. 2d 1040 (N.D. Cal. 2011)...........................................................10

*Better Packages, Inc. v. Zheng,*
    2006 WL 1373055 (D.N.J. May 17, 2006)......................................................16

*Blue Angel Films, Ltd. v. First Look Studios, Inc.,*
    2011 WL 830624 (S.D.N.Y. Mar. 9, 2011).....................................................15

*E.E.O.C. v. UPMC,*
    2011 WL 2118274 (W.D. Pa. May 24, 2011)  ................................................14

*Entm't Tech. Corp. v. Walt Disney Imagineering,*
    2003 WL 22519440 (E.D. Pa. Oct. 2, 2003) ...................................................15

*Facebook, Inc. v. Various, Inc.,*
    2011 WL 2437433 (N.D. Cal. June 17, 2011)............................................passim

*Gillespie v. Civiletti,*
    629 F.2d 637 (9th Cir. 1980) ...........................................................................1

*Hansen Beverage Co. v. Innovation Ventures, LLC,*
    2008 WL 3992353 (S.D. Cal. Aug. 28, 2008)..................................................17

*In re Heckmann Corp. Securities Litigation,*
    2010 WL 5887794 (D. Del. Feb. 28, 2010).....................................................14

*IP Co., LLC v. Cellnet Tech., Inc.,*
    2008 WL 3876481 (N.D. Cal. Aug. 18, 2008) .................................................15

*Lifescan Scotland, Ltd. v. Shasta Techs., LLC,*
    2011 WL 5975335 (N.D. Cal. Nov. 29, 2011) .................................................11

*Mitra v. State Bank of India,*
    2005 WL 2143144 (S.D.N.Y. Sept. 6, 2005) ..................................................13

*Newton v. Diamond,*
    388 F.3d 1189 (9th Cir. 2004) ..........................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Perfect 10, Inc. v. Megaupload Ltd.*,
  2011 WL 3203117 (S.D. Cal. July 27, 2011) ............................................................5

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
  208 F.R.D. 273 (N.D. Cal. 2002)...........................................................................15

*Wakefield v. Thompson*,
  177 F.3d 1160 (9th Cir. 1999) ................................................................................1

STATUTES AND RULES

17 U.S.C. § 512(c) ......................................................................................................15

Fed. R. Civ. P.
  26 .............................................................................................................................15
  26(d)........................................................................................................................10
  26(f) ...................................................................................................................passim

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

## I.    INTRODUCTION

Megaupload does not come close to showing "good cause" for its transparent attempt to take one-sided merits discovery outside the schedule that the Federal Rules decree for civil cases. Megaupload is not seeking and will not seek a preliminary injunction; its vaunted video posting is up on YouTube. And, contrary to Megaupload's characterization, there is nothing "limited" about the discovery it is trying to jump the line to serve. Megaupload is not simply trying to determine which corporate entity within the Universal Music Group dealt with which website in regard to the video. We told Megaupload and the Court—in a TRO opposition we had one day to submit, Dkt. No. 11—that the corporation on the defense side is UMG Recordings, Inc., and that the only website that it asked to temporarily remove the video was YouTube. *See* Dkt. No. 14. The attached declaration from the General Counsel of Universal Music Group confirms exactly that. *See* Declaration of Jeffrey Harleston ("Harleston Decl.") ¶ 8. The discovery that Megaupload insists it be entitled to serve goes far beyond this, and aims to discover every communication going "to the heart of the parties' dispute[,]" including every communication regarding this matter involving any "UMG Entity" and any website that took down the video. Plaintintiff's Motion for Leave to Take Limited Discovery Prior to Fed. R. Civ. P. 26(f) Conference ("Mot.") at 14 (Dkt. No. 21). This is merits discovery—not "limited" discovery—and Megaupload can and should wait to serve requests and subpoenas for it, just like any other party in non-emergency civil litigation.

Megaupload says it should be allowed to bypass the Federal Rules' timing rules for two reasons, but neither of them provides "good cause." Megaupload's primary argument is that it needs discovery to identify any and every possible "Doe" defendant. Mot. at 11. Megaupload ignores the fact that "Doe" pleading is "disfavored" in the Ninth Circuit. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). And, Megaupload does not satisfy the narrow exception for expedited discovery to identify Does. As Magistrate Judge Ryu recently explained:  "Courts in this Circuit permit expedited discovery to identify unknown defendants usually when the plaintiff simultaneously [1] *can identify no defendants* and [2] *legitimately fears that information leading to their whereabouts faces*

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

1    *imminent destruction.*"  *Facebook, Inc. v. Various, Inc.*, 2011 WL 2437433, at *3 (N.D. Cal. June

2    17, 2011) (emphasis added).  Megaupload does not satisfy either of these requirements.

3    Megaupload has identified one corporate entity that it wants to name as a defendant:  Universal

4    Music Group, Inc.  And, as discussed above, we told Megaupload back on December 15, and

5    have told them again with a corporate declaration, that UMG Recordings, Inc. was the corporate

6    entity, and YouTube was the only website it asked to remove the video.  Megaupload says that

7    because there are multiple corporate entities within the Universal Music Group of companies,

8    Megaupload needs to conduct wide-ranging merits discovery so it can be 100% positive that it

9    has named exactly the right corporate entity as a defendant.  That is absurd.  Virtually every

10   major company in the country is comprised of multiple subsidiary corporations.  If a plaintiff, by

11   simply listing "Does 1-100" in its caption, could take wide-ranging merits discovery under the

12   justification of identifying defendants, then the Federal Rules' provisions for the timing of

13   discovery would be meaningless.  Megaupload can easily add UMG Recordings, Inc. in as a

14   defendant right now.  Megaupload will have the opportunity to explore and confirm the who,

15   what, when, where and why of the request in the ordinary course of discovery under the Federal

16   Rules.  Megaupload also fails to meet the second part of the test above, because it cannot make

17   any legitimate claim that the Universal Music Group of companies will lose any documents

18   showing who is the correct corporate defendant—or other documents relating to this matter,

19   because Universal Music Group is retaining those documents.  *See* Harleston Decl. ¶ 10;

20   Declaration of Clifton A. Lancaster ("Lancaster Decl.") ¶ 2.

21          Megaupload's second claimed need for immediate discovery is that it is worried that third

22   party websites may destroy relevant evidence.  As discussed above—and as Megaupload's

23   declaration shows—there is only one third-party website at issue here, namely, YouTube.

24   Dotcom Decl. ¶ 2 (Dkt. No. 23).  If there were other entities that actually removed Megaupload's

25   posting in response to a request to do so, Megaupload presumably would have notice of that, as it

26   claims to have from YouTube.  *See id.*, Ex. 1.  Even as to YouTube, Megaupload has not

27   demonstrated that there is any threat, much less an imminent one, that YouTube may destroy any

28   relevant documents or data.  Indeed, Megaupload does not even say that it has asked YouTube to

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

1    retain such information pending a properly served subpoena at the time when the Federal Rules

2    allow such discovery, much less that YouTube has told Megaupload that it is about to destroy

3    such information.  If simply asserting that third parties might destroy relevant evidence were

4    enough to get expedited discovery, this too would render the Federal Rules' timing provisions

5    meaningless.

6           The real reason that Megaupload has filed this motion is so it can conduct wide-ranging

7    merits discovery, while shielding as long as possible any discovery into Megaupload concerning

8    the video's creation and Megaupload's reputation.  Megaupload claims that the temporary

9    removal of its video harmed its purported "reputation as a responsible provider of file services—

10   the very reputation that Megaupload's investment in the Megaupload Video and its numerous

11   endorsements was designed to enhance."  Megaupload TRO App. at 14:25-26 (Dkt. No. 5).

12   Megaupload, however, is publicly known to have a very different reputation, namely, as a

13   notorious service that deliberately provides instant access to massive numbers of infringing

14   copies of music and movie content.  Indeed, just within the last several weeks, the Office of the

15   United States Trade Representative placed Megaupload on the official list of "Notorious

16   Markets," which have "engaged in piracy and counterfeiting" that "cause economic harm to U.S.

17   and other IP right holders."  *See* Declaration of Kelly M. Klaus ("Klaus Decl."), Ex. A at 1.

18   Megaupload undoubtedly wants to put off for as long as possible any discovery into just what

19   kind of "provider of file services" Megaupload actually is.  Megaupload's tactical calculations do

20   not provide good cause for dispensing with the Federal Rules.  The Court should deny this motion

21   in its entirety.

22   **II.     FACTUAL BACKGROUND**

23           **A.     Universal Music Group**

24           Much of Megaupload's motion is devoted to painting a picture of the Universal Music

25   Group as some impossible-to-understand tangle of corporate entities.  Megaupload argues that,

26   because there are numerous "UMG Entities," Megaupload should be allowed to conduct

27   expedited discovery to be absolutely satisfied that it has named exactly the right corporate

28   defendant.  As we discuss in the Argument section below, Megaupload's argument is legally and

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

1    factually meritless.  Before getting to that, however, let us demystify the le Carré-esque yarn of

2    corporate intrigue that Megaupload tries to spin.

3           As the name suggests—and as is not at all uncommon in either the record industry or

4    American industry generally—the "Universal Music Group" does not refer to a single corporate

5    entity.  "Universal Music Group"—hereinafter we will refer to it as "UMG"—is a colloquial

6    name; it refers to the group of music-related companies that ultimately are owned by the French

7    company, Vivendi, S.A.  Harleston Decl. ¶ 2.  UMG consists of recorded music companies, music

8    publishing companies, distribution companies, merchandising companies and management

9    companies.  *Id.*

10          Megaupload's complaint names as a defendant Universal Music Group, Inc. (hereinafter

11   "UMGI"), undoubtedly because Megaupload was looking for an entity with the name "Universal

12   Music Group" to sue.  UMGI is simply a holding company.  *Id.* ¶¶ 3-4.  It has no day-to-day

13   operations; it does not itself own, manufacture, distribute, sell or otherwise exploit sound

14   recordings or musical compositions.  *Id.* ¶ 3.

15          The actual business of producing and distributing music in the U.S. is done through other

16   corporate subsidiaries.  On the recorded-music side, the major company in the United States is

17   UMG Recordings, Inc. (hereinafter "UMGR"), which is an indirect subsidiary of UMGI.  *Id.*

18   ¶¶ 3-4.  As we discuss below—and support with fully competent evidence—UMGR is the entity

19   that has the agreement with YouTube that came into play in this case.

20          Megaupload's motion insinuates that other "UMG entities" could be proper defendants in

21   this case.  First, Megaupload refers to a press release talking about an agreement between

22   YouTube and Universal Music Publishing Group ("UMPG").  Mot. at 9.  Relying on this press

23   release, Megaupload suggests that, even if UMGR is a party to the YouTube Agreement, "it

24   apparently was not the only one," and thus discovery is warranted to see if UMPG should be

25   named as a defendant.  Mot. at 9:19.  Megaupload's insinuation is baseless.  UMPG refers to the

26   collection of music publishing companies within UMG's operations in the U.S.  Harleston Decl.

27   ¶ 6.  Music publishing deals with rights in musical compositions, which are distinct from rights in

28   sound recordings.  *See Newton v. Diamond*, 388 F.3d 1189, 1191 (9th Cir. 2004).  UMPG has its

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

1   own separate agreement with YouTube.  Harleston Decl. ¶ 6.  Hence, Megaupload's assertion

2   that, because UMPG may be a party to the same agreement that UMGR has with YouTube,

3   Megaupload is entitled to broad discovery into "UMG Entities," is wrong.

4          Megaupload also speculates about the propriety of an entity called "Universal Music

5   Logistics" (hereinafter "UML") as a potential defendant.  Mot. at 9-10.  In particular,

6   Megaupload speculates that, because a notice Megaupload received from YouTube identified an

7   Amy Peeler as the contact person for UMG, and because a web search shows that Ms. Peeler is

8   employed by UML, then maybe UML should be a defendant.  *Id*.  Again, there is much less here

9   than meets the eye.  "UML" is a corporate "doing business as" ("dba") name for a corporation

10  called UMG Manufacturing & Logistics, Inc.  Harleston Decl. ¶ 7.  UML provides a variety of

11  support services for digital recorded music products.  As relevant in this case, however, Ms.

12  Peeler dealt with YouTube in connection with UMGR's agreement with YouTube, discussed in

13  Section C below.  *Id*. ¶ 9.  Megaupload also suggests that because Ms. Peeler's email address has

14  a "umusic.com" domain name, perhaps she works for some other entity that Megaupload should

15  name as a defendant.  Mot. at 6:24-28.  That is wrong.  The "umusic.com" email domain name is

16  used by all corporate, recorded music and music publishing employees within UMG in the U.S.

17  Lancaster Decl. ¶ 3.  There is nothing sinister—or even relevant—about the fact that Ms. Peeler

18  has a "umusic.com" domain in her email address.

19          **B.      Megaupload**

20          Beyond the innocuous self-reference as "a leading provider of online storage and data

21  transmission services," Mot. at 4:23-24, Megaupload says little about its business or its

22  "responsible" "reputation" that the temporary removal of its video posting supposedly

23  "sabotaged."  *Id*. at 4:23-24; Megaupload TRO App. at 14:25-26 (Dkt. No. 5).  Megaupload does

24  indeed have a "reputation."  It is hardly the reputation of a "responsible" company, but rather that

25  of a deliberate facilitator of mass copyright infringement.  Understandably, Megaupload wants to

26  put off discovery into itself—and instead to focus merits discovery only in the other direction—

27  for as long as possible in this litigation.

28

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

1    A 2009 article in *Forbes* reported that Megaupload.com and its affiliate megavideo.com

2    "offer, at no cost, practically every popular television series episode by episode (*Mad Men*, for

3    example), music albums (such as Jay Z's *The Blueprint 3*) and films including several still in

4    theaters, such as *Where the Wild Things Are* and *Zombieland*."  Andy Greenberg, *The "Mega"*

5    *Sites: Bigger Than Facebook*, Forbes, Nov. 16, 2009, reprint available at

6    www.forbes.com/forbes/2009/1116/outfront-technology-online-piracy-copyright-

7    megavideo.html.  *See* Klaus Decl., Ex. B.  A 2011 lawsuit against Megaupload and its founder

8    Kim Schmitz—who changed his name to Kim Dotcom, and is the declarant on this motion—

9    alleged that Megaupload operates as follows:

> After a file is uploaded to Megaupload.com, Megaupload creates a unique
> Uniform Resource Locator ("URL"). [Compl. ¶ 22.] The URL is the address of the
> file on the internet. [*See id.*] Anyone with the URL can download the file from
> Megaupload's servers. [*Id.*] Megaupload and its users disseminate URLs for
> various files throughout the internet. [*Id.*] In order to view, copy, or download such
> files from the Megaupload websites without waiting, users must pay a membership
> fee. [*Id.*] …. This much is clear: Megaupload allegedly stores billions of dollars of
> "pirated" full-length movies, songs, software, and images on its servers. [*Id.* ¶ 22.]
> Megaupload apparently depends on, and provides substantial payouts to, affiliate
> websites who catalogue the URLs providing access to the mass of "pirated"
> content on Megaupload's servers. [*Id.* ¶ 26.]

17   *Perfect 10, Inc. v. Megaupload Ltd.*, 2011 WL 3203117, at *1-2 (S.D. Cal. July 27, 2011), Klaus

18   Decl., Ex. C.[1]

19   On December 20, 2011, the Office of the United States Trade Representative ("USTR")

20   included Megaupload in its "Out-of-Cycle Review of Notorious Markets," which is an official

21   government publication that identifies marketplaces widely known to be "engaged in piracy and

22   counterfeiting" that "cause economic harm to U.S. and other IP right holders."  Klaus Decl., Ex.

23   A at 1.  The USTR report states that Megaupload "allow[s] for the unauthorized distribution of

---

[1] The allegations in this summary are from the district court's order denying Megaupload's motion to dismiss.  In October of 2011, Perfect 10 and Megaupload settled this case.  "[A] key term of the settlement agreement" was a joint request by the parties that the District Court vacate its order denying Megaupload's motion to dismiss.  The court granted that request.  Klaus Decl., Ex. D.  While the court vacated that Order, the allegations of Megaupload's conduct remain available in the public record.  Particularly relevant to the issue of discovery in this case is the fact that, by settling the case, Megaupload avoided discovery into whether it aims to induce mass infringement by the users the company says it wants to attract.

- 6 -

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

protected content through subscriptions and reward schemes to popular uploaders." *Id.* at 4.

When discovery opens for both sides, Defendant fully intends to take discovery regarding these

matters, which all go to Megaupload's claimed "reputation," the harm it says it has suffered, and

the types of users it aims to reach, including with its video posting. All of this—like the merits

discovery that Megaupload wants to take—can and should await discovery in accordance with the

Federal Rules.

### C. Background Events Regarding the Video

Megaupload alleges that on December 9, 2011 it uploaded its Video to YouTube. Compl.

¶ 1 (Dkt. No. 1). Megaupload asserts that it obtained clearances from every single one of more

than a dozen artists it says appeared in the Video. Mot. at 4-5; Dotcom TRO Decl. ¶¶ 6-8 & Ex.

A (Dkt. No. 6). Notably, Megaupload has attached just one of these claimed consents to its

papers. Dotcom TRO Decl., Ex. A.[2]

UMGR and YouTube are parties to a March 31, 2009 Video License Agreement for UGC

Video Service Providers (hereinafter, the "YouTube Agreement"). Harleston Decl. ¶ 5. The

agreement grants UMGR contractual rights regarding the removal or blocking of certain content

displayed through YouTube; these terms (and others) are confidential between the parties. *Id.* As

discussed, the only website that any UMG entity contacted regarding the video posting was

YouTube—and the entity responsible for that contact was UMGR, pursuant to the terms of the

YouTube Agreement. *Id.* ¶ 8.[3] One of the individuals responsible for administering UMGR's

rights in this regard under the YouTube Agreement—and for the communications with YouTube

---

[2] Megaupload complains that Universal's referring to the fact of UMGR's agreement with YouTube, without submitting the actual agreement itself, supposedly violated "the Best Evidence Rule." Mot. at 8 n.3. Megaupload's assertion is not only wrong as a matter of law, but deeply ironic: under Megaupload's reasoning, its failure to submit all of the supposed written consents violates the Best Evidence Rule. We note, moreover, that the existence and nature of the purported consents will be critical issues in this case. As one publication noted, "some have speculated that celebrities may have been misled as to the nature of the viral campaign and what exactly they were signing." http://www.billboard.biz/bbbiz/industry/legal-and-management/megaupload-attorney-speaks-on-universal-1005685252.story. This also is illuminating of Megaupload's real reasons for seeking one-sided expedited discovery.

[3] While *some* instances of the posting on YouTube were thereby blocked, others remained up on the site throughout the weekend of December 10. *See* Klaus TRO Decl., Ex. 5 (Dkt. No. 14-1). (www.youtube.com/watch?v=Y8aUCnyKH2U, identified as posted on Dec. 9, 2011; multiple additional links to the Video listed along the side).

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

1  relevant to this case—is David Benjamin, the Senior Vice President of Anti-Piracy for UMG. *Id*.

2  Mr. Benjamin was assisted in this regard by Ms. Peeler, *id*. ¶ 9, which explains why Ms. Peeler's

3  name is on the notice Megaupload received from YouTube. *See* Dotcom Decl., Ex. 1.

4        Apparently, within a matter of hours, Megaupload contacted YouTube to object to the

5  removal of the Video.  Megaupload filed this lawsuit on Monday, December 12.  It moved for a

6  TRO two days later, on December 14, 2011.  UMGI (the only named Defendant) told the Court

7  that there had been no objection to YouTube's restoration of Megaupload's posting, and that there

8  would be no further request from any UMG entity to any website—YouTube or any other—to

9  remove the Video pending the outcome of the litigation.  Dkt. No. 17 at 1.

10        Megaupload admitted in a Court filing that its posting was fully restored to YouTube

11  sometime between December 15 and 16.  Dotcom Supp. TRO Decl. ¶ 2 & Ex. A (Dkt. No. 16).

12  Judge Wilken denied the TRO application as moot on December 16.  Dkt. No. 18.  Judge

13  Wilken's order noted that Megaupload had indicated in its papers that it might want to make a

14  motion for preliminary injunction and seek expedited discovery.  *Id*.  Judge Wilken indicated that

15  Megaupload would have to file and support any such motion in accordance with the Rules.  *Id*.

16  As noted at the outset, Megaupload has not filed a preliminary injunction motion, and it does not

17  even suggest it has any basis for doing so.

18          **D.**     **Megaupload's Request for Expedited Discovery**

19        On December 22, Megaupload's counsel emailed the undersigned counsel, asking if UMG

20  would consent to "a motion for expedited discovery to allow Mega to subpoena from

21  Google/YouTube and Vimeo et al 'Megaupload Video' takedown notices, related data and

22  communications, and related agreements to assist the plaintiff to name the Does amongst other

23  things."  Klaus Decl., Ex. E at 2.  We asked Megaupload to clarify which specific parties

24  Megaupload sought to subpoena, what categories of documents Megaupload would request, and

25  why it believed this discovery was appropriate in advance of the time for ordinary course

26  discovery under the Federal Rules.  *Id*. at 1.  Megaupload's counsel declined to provide this

27  information.  *Id*.

28

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

Megaupload filed this motion five days later, on December 27.  The discovery that Megaupload seeks is hardly limited—either as to the proposed recipients of the discovery, or the subjects.  Megaupload said in meet-and-confer correspondence—and still claims in this motion— that it really just wants limited discovery to know who the particular defendant should be.  The TRO filings said—and the declaration from Mr. Harleston, ¶ 8, confirms—that Megaupload's purported complaint is with UMGR.  But Megaupload's proposed discovery goes far beyond trying to get *the name* of the corporate entity that dealt with YouTube.  Megaupload instead swings for the fences, to try to get as much merits discovery as possible into every document involved in those dealings.  Megaupload now states that it seeks expedited discovery from UMGI, (the named Defendant), UMGR (the proper Defendant), and "non-party UMG entities"—an open-ended term that would include "*any other UMG affiliate, agent or representative*," Proposed Order at 1 n.1 (Dkt. No. 24), as well as completely undefined third party internet service providers.  *Id.* at 1.  From this potentially unlimited number of discovery recipients, Megaupload proposes that it be allowed to ask for the following categories of documents:

> All documents in the possession of any internet service provider (as the term is used in 17 U.S.C. § 512(k)(B)) who took down the Megaupload Video that refer to or reflect (i) any notices, communications (whether oral, written or electronic) and processes (including without limitation CMS) that resulted in that takedown of that video or any copy of it, (ii) any information as to any "reference file" for such video or its impact, and (iii) logs and other data reflecting denials of access to the video or any copy of it because of the takedown or reference files.

> All communications relating to the Megaupload Video between any UMG Entity and any service provider or person known to have contacted an internet service provider, regardless of whether the communication purports to be a takedown notice under the DMCA.

> All communications relating to the Megaupload Video between YouTube and any person, including any UMG Entity or others, who requested or implemented the removal from public access of the Megaupload Video.

> All agreements, terms, or takedown procedures between any UMG Entity and any website or service provider with whom any UMG Entity communicated concerning takedown, restoration, or assertion of UMG's purported rights relating to the Megaupload Video or the content therein.

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

1   Mot. at 1-2.  Megaupload also asks to be able to serve UMGI with three interrogatories—the

2   contents of which Megaupload never explains.  *See* Proposed Order at 1 (Dkt. No. 24).

3          This is hardly the request for "limited" discovery that Megaupload claims it to be.

4   **III.    ARGUMENT**

5          **A.    Rule 26(d) Prohibits Expedited Discovery Absent a Showing of "Good Cause"**

6          Rule 26(d) provides that a party "may not seek discovery from any source" prior to the

7   conference required by Rule 26(f), which must take place at least 21 days before the initial Case

8   Management Conference.  Fed. R. Civ. P. 26(d), (f).  In this case, the Rule 26(f) conference

9   deadline is March 7, 2012.  *See* Dkt. No. 4.  By putting a hold on discovery on both sides to a

10  case, Rule 26(d) facilitates a substantive Rule 26(f) conference and conference with the Court.

11  The parties are able to engage in a two-way dialogue, with give-and-take, about the multiple

12  discovery-planning issues that Rule 26(f)(3) and the Northern District's Standing Order on case

13  management require the parties to discuss.

14         In order to bypass the timetable that the Federal Rules establish, a party must show "good

15  cause" for early discovery.  *Apple Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1044 (N.D.

16  Cal. 2011).  The good cause inquiry requires evaluating the claimed need for expedited discovery,

17  as well as the prejudice to the responding party.  *Id.*  The court must perform this evaluation in

18  light of "the entirety of the record . . . and the reasonableness of the request in light of all the

19  surrounding circumstances."  *Facebook, Inc. v. Various, Inc.*, 2011 WL 2437433, at *2 (N.D. Cal.

20  June 17, 2011).  "Factors that affect the court's assessment of the reasonableness of a request"

21  include "whether a preliminary injunction is pending" and the "purpose for requesting the

22  expedited discovery.'"  *Id.* (quoting *Am. Legalnet*, 673 F. Supp. 2d at 1071).  "Even if the court

23  grants a party expedited discovery, in the interests of justice, it may tailor its ruling to avoid

24  'excessive or burdensome discovery.'"  *Id.*

25         **B.    Megaupload Has Not Demonstrated "Good Cause" Warranting Expedited
                Discovery**

26

27         Megaupload has not met its burden of establishing "good cause" to engage in expedited

28  discovery prior to the Rule 26(f) conference.  There is no pending preliminary injunction motion

1    (indeed, the Court denied Megaupload's TRO as moot) and thus no urgent need for the requested

2    discovery.  *See Lifescan Scotland, Ltd. v. Shasta Techs., LLC,* 2011 WL 5975335, at *3 (N.D.

3    Cal. Nov. 29, 2011) (denying motion for expedited discovery where "a motion for a preliminary

4    injunction is not pending and [plaintiff] has not indicated that it ever intends to file one" and

5    holding that "[d]iscovery ought to proceed instead in the normal course and after the Rule 26(f)

6    conference"); *Facebook,* 2011 WL 2437433, at *3 (denying motion for expedited discovery

7    where party had only "mere inclination to file [preliminary injunction] motion").

8         Moreover, Megaupload's two proffered justifications for seeking expedited discovery do

9    not withstand scrutiny.  Megaupload has failed to establish that it will suffer any "harm[] by

10   delaying the broad-based discovery it now requests until after the initial conference between the

11   parties under Rule 26(f)."  *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1071 (C.D. Cal.

12   2009).  The reality is that Megaupload seeks wide-ranging one-way merits discovery without

13   exposing any of its own internal documents to production.  This will give Megaupload an unfair

14   early advantage in the litigation, prejudice Defendant, and upset the orderly discovery process

15   contemplated by Rule 26(f).  Megaupload's requested discovery is improper and its motion

16   should be denied.

17        **1.    Megaupload Does Not Need Expedited Discovery to Determine the
              Identity and Roles of Unnamed Defendants**

18

19        Megaupload first asserts that it is entitled to expedited discovery to identify all Doe

20   defendants.  Mot. at 11.  The claim is baseless, and the discovery that Megaupload asks for goes

21   far beyond identifying Does.  In the first place, there is no mystery to which entity Megaupload

22   can and should name as the Defendant:  UMGR, which is an indirect subsidiary of the named

23   defendant, UMGI.  *See* Dkt. No. 14 at 1 n.1.  Megaupload claims that it should not have to rely on

24   the TRO opposition papers (which had to be submitted within a day) on that point, but rather

25   should have a company declaration.  Mot. at 13.  Whether this has to be satisfied with a

26   declaration is academic:  The attached declaration from Mr. Harleston, the General Counsel of

27   UMG, North America, confirms what we said in the TRO opposition, and shows that

28   Megaupload's complaint is directed to UMGR.  *See* Harleston Decl. ¶ 8.  Megaupload, however,

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

insists it is entitled to still more discovery; its position is that it should be entitled to take

discovery immediately into all the communications concerning the events that are at issue in the

case, so that Megaupload can be 100% satisfied it has named the right defendant.  There is no

legal support for Megaupload's position.  If Megaupload were right, then a party could always

blow past the timing requirements of Rule 26(d) by claiming it needed to be absolutely positive it

had identified exactly the right defendant.  The law is contrary to Megaupload's extreme position.

As Magistrate Judge Ryu recently explained (in denying a motion for expedited

discovery):

> Courts in this Circuit permit expedited discovery to identify unknown defendants
> usually when the plaintiff simultaneously *can identify no defendants and
> legitimately fears that information leading to their whereabouts faces imminent
> destruction. See, e.g., UMG Recordings, Inc. v. Doe*, No. C–08–1193, 2008 WL
> 4104214, at *4 & n. 3 (N.D.Cal. Sept. 3, 2008) (not reported in F. Supp.); *Arista
> Records LLC v. Does 1–43*, No. 07–CV–2357, 2007 WL 4538697, at *1 (S.D.Cal.
> Dec. 20, 2007) (not reported in F. Supp.); *Capitol Records, Inc. v. Doe*, No. 07–
> CV–1570, 2007 WL 2429830, at *1 (S.D.Cal. Aug. 24, 2007) (not reported in F.
> Supp.).  Plaintiff faces neither circumstance.  Here, Plaintiff may obtain discovery
> to identify Unnamed Defendants during the normal course of discovery.
> Moreover, Plaintiff has not argued that relevant information may be in danger of
> destruction.

*Facebook*, 2011 WL 2437433, at *3 (emphasis added).

In the cases that Megaupload relies on—almost all of which involve third-party discovery

of Internet service providers to identify anonymous Internet user defendants[4]—there is *no named

defendant at all*, and there is a credible risk that records providing the identities of these

individuals face imminent destruction by a third party.  Neither of these conditions applies here.

First, this is not a "no defendant" case.  Megaupload *has* named one defendant; and that

Defendant *has identified* the corporate subsidiary responsible for communicating with YouTube.

If Megaupload wants to test whether it has named the right defendants or has named all

---

[4] *See* Memo. at 11 (citing *UMG Recordings, Inc. v. Does*, 2006 WL 1343597, at *1; 64 Fed. R.
Serv. 3d 305 (N.D. Cal. Mar. 6, 2006) (permitting expedited discovery where "Plaintiffs do not
know the names of the Defendants but have identified each Defendant by a unique Internet
Protocol ("IP") address" and noting that "ISPs typically retain user activity logs for only a limited
period" and "[i]f the information is not disclosed before it is destroyed, Plaintiffs will forever lose
their opportunity to pursue infringement claims against the people associated with these IP
addresses"); *UMG Recordings, Inc. v. Doe*, 2008 U.S. Dist. LEXIS 92788 (N.D. Cal. June 29,
2008); *Zoosk Inc. v. Doe I*, 2010 WL 5115670 (N.D. Cal. Dec. 9, 2010)).

1   defendants, Megaupload can do so during the normal course of discovery.  *See also, e.g., Mitra v.*

2   *State Bank of India*, 2005 WL 2143144, at *7 (S.D.N.Y. Sept. 6, 2005) ("if the Individual

3   Defendants are still employees of [defendant], and there is no indication that they are not,

4   Plaintiff will likely be able to obtain discovery from them at any point through service of Rule

5   30(b)(6) deposition notices and subpoenas on SBI, who will almost certainly have to designate

6   the Individual Defendants to testify on its behalf given their alleged involvement in the events

7   recounted in Plaintiff's Complaint. . . . Thus Plaintiff has failed to provide good cause for

8   commencing discovery immediately, and, as such, her request for expedited discovery is

9   denied.").  Megaupload's motion also fails the second required element for early "Doe"

10   discovery, since there is no risk that the relevant information will be destroyed:  the documents of

11   the relevant custodians within UMG are being retained.  *See* Harleston Decl. ¶ 10; Lancaster

12   Decl. ¶ 2.

13        Even if Megaupload's motion satisfied the requirements for discovery to identify

14   "Does"—which the motion does not—the motion seeks relief way beyond that claimed purpose.

15   Megaupload seeks, *inter alia*, "[a]ll agreements, terms, or takedown procedures between any

16   UMG Entity and any website or service provider with whom any UMG Entity communicated

17   concerning takedown, restoration, or assertion of UMG's purported rights relating to the

18   Megaupload Video or the content therein," "[a]ll documents in the possession of any internet

19   service provider . . . who took down the Megaupload Video that refer to or reflect any (i) notices,

20   communications (whether oral, written or electronic) and processes (including without limitation

21   CMS) that resulted in that takedown of that video or any copy of it," and all service provider

22   "logs and other data reflecting denials of access to the video or any copy of it because of the

23   takedown or reference files."  Mot. at 1-2.  And Megaupload proposes to be able to serve these

24   (and other) broad discovery requests on "non-party UMG entities"—an open-ended term that

25   would include "*any other UMG affiliate, agent or representative*," Proposed Order at 1 n.1 (Dkt.

26   No. 24).

27        These broad requests have little if anything to do with identifying the identifies of

28   unnamed defendants, further demonstrating the improper nature of the Motion.  *See Facebook*,

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

1  2011 WL 2437433, at *3 ("Plaintiff's discovery requests are so broad as to be implausibly

2  tailored for the sole purposes of discerning Unnamed Defendants' identities . . . . For these

3  reasons, Plaintiff's request for expedited discovery is denied.").

4          Megaupload also asserts that early discovery is appropriate not only so it can identify the

5  "Does," but so Megaupload may be able to "amend its complaint to state appropriate claims."

6  Mot. at 14.  Megaupload has no right to conduct discovery—much less early discovery—to go

7  fishing for additional claims.  The Rule advisory notes are clear that a party has "no entitlement to

8  discovery to develop new claims or defenses that are not already identified in the pleadings."

9  Fed. R. Civ. P. 26 advisory committee's note.[5]

10         In sum, Megaupload's claimed need for discovery to amend its pleadings is without merit.

**2.      Megaupload's Purported Need for Expedited Third-Party Discovery
Does Not Establish "Good Cause"**

12         Megaupload next claims that it needs expedited discovery from third-party service

13  providers (i.e., YouTube) to "ensure that relevant, critical evidence" is "not lost or destroyed

14  before it can be obtained through discovery in the normal course."  Mot. at 11.  This is groundless

15  and does not rise to the level of "good cause."

16         At the outset, Megaupload's argument is based on pure speculation.  Megaupload has

17  made absolutely no showing that there exists any risk, much less an imminent one, that YouTube

18  or any other third party will delete or lose any of the requested discovery.  Nor has Megaupload

19  demonstrated that, even if such a risk existed, a simple letter notifying the third party of the

20  litigation and requesting the preservation of documents would not suffice (YouTube in fact has

21  been aware of this case since the outset of the litigation, *see* Klaus TRO Decl., Ex. 4 (Dkt. No.

22  14-1)).  It seems highly unlikely—to say the least—that YouTube would tell Plaintiff or the Court

23  that it is going to destroy documents related to this matter unless the Court issues an order for

24

---

[5] *See, also, e.g., E.E.O.C. v. UPMC*, 2011 WL 2118274, at *4 (W.D. Pa. May 24, 2011) ("the
Court concludes that the Subpoena at issue constitutes a 'fishing expedition' to discover the
existence of other potential claimants rather than a reasonable effort to develop information that is
relevant to Gailey's charge of discrimination"); *IP Co., LLC v. Cellnet Tech., Inc.*, 2008 WL
3876481, at *2 (N.D. Cal. Aug. 18, 2008) ("Plaintiffs cannot use their subpoena to discover
documents relevant to another suit or potential suit."); *Abrahams v. Young & Rubicam*, 979 F.
Supp. 122, 129 (D. Conn. 1997) (the "purpose of discovery is to find out additional facts about a
well-pleaded claim, not to find out whether such a claim exists").

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

1   expedited discovery. Indeed, Megaupload does not even state that it has asked YouTube (or

2   anyone else) to preserve documents regarding this matter. If Megaupload were right that the

3   mere possibility that some third party somewhere might destroy a document were accepted, then

4   the timing rule in Rule 26(d) would be meaningless. Megaupload, however, is wrong.

5          *In re Heckmann Corp. Securities Litigation*, 2010 WL 5887794 (D. Del. Feb. 28, 2010) is

6   instructive on this point. There, the plaintiff sought to serve a document preservation subpoena

7   on third parties before the Rule 26(f) conference and while discovery was stayed under the

8   Private Securities Litigation Reform Act, pending a ruling on the defendant's motion to dismiss,

9   per the PSLRA's automatic stay provisions. *See id.* at *1-2. Like Megaupload here, the plaintiff

10  argued that there was a "substantial risk that evidence will be destroyed [by third parties] due to

11  routine corporate document destruction prior" to the court's ruling on the motion to dismiss. *Id.*

12  at *2. The court stated that discovery would be permissible if "necessary to preserve evidence or

13  to prevent undue prejudice to that party." *Id.* at *3. The plaintiff, however, had "not adequately

14  shown" that "preservation subpoenas are needed and that preservation letters are insufficient." *Id.*

15  at *5. He had "produced no evidence, for example, that entities like the third-parties destroy

16  electronic data by overwriting in the usual course of performing routine backup procedures, or

17  standard or typical retention policies," but rather, like Megaupload, had "merely assert[ed] that

18  issuing preservation subpoenas is necessary because loss or destruction of evidence is possible

19  due to routine corporate document destruction procedures." *Id. See also id.* (plaintiff's

20  "arguments are grounded on mere speculation of document destruction by the third parties").

21  Because the court could not "determine whether the risk of destruction of relevant evidence is

22  imminent based on allegations of possible destruction," it held that "preservation letters should

23  furnish sufficient notice" of the litigation to third parties. *Id.*

24         Courts routinely deny requests for expedited third-party discovery, including in the

25  *Semitool* decision Megaupload relies upon. *See, e.g., Semitool, Inc. v. Tokyo Electron Am., Inc.*,

26  208 F.R.D. 273, 277-78 (N.D. Cal. 2002) (although court permitted expedited discovery against

27  defendant, it "reache[d] a different conclusion as to the third-party discovery," finding

28  "insufficient cause to permit expedited third-party discovery."); *Entm't Tech. Corp. v. Walt*

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

1   *Disney Imagineering*, 2003 WL 22519440, at *5 (E.D. Pa. Oct. 2, 2003) (denying motion for

2   expedited discovery and noting that "[t]o the extent that Plaintiff seeks documents from third

3   parties at [t]his [sic] early stage, the requests may be overbroad" and that "there is no pending

4   preliminary injunction hearing for which the parties need to prepare, rendering the need to

5   expedite discovery less urgent"); *Better Packages, Inc. v. Zheng*, 2006 WL 1373055, at *4

6   (D.N.J. May 17, 2006) (same).

7          Megaupload's unfounded fear of document destruction is further belied by the fact that

8   much (if not most) of the discovery that it says it wants from YouTube would be in the possession

9   of UMGR, who is retaining documents.  The agreement between UMGR and YouTube obviously

10  exists in documentary form.  That document is not going to disappear, and Megaupload can

11  request it in discovery.  Megaupload can also request from UMGR all the communications

12  between it and YouTube that gave rise to the temporary removal of the posting.

13         In sum, the purported need to preserve documents within the possession of third parties

14  does not establish the requisite "good cause" warranting expedited discovery.

15         **C.     Megaupload's Request for One-Way Expedited Merits Discovery Will Give It
               an Unfair Advantage in the Litigation, Prejudice Defendant, and Upset the**
16             **Orderly Discovery Process Contemplated by Rule 26(f)**

17         Contrary to Megaupload's claim that its request for expedited discovery will make the

18  case more "efficient" without any prejudice to Defendant, Mot. at 14-15, the reality is that it will

19  give Megaupload expansive one-way merits discovery, prejudice Defendant, and upset the

20  orderly discovery process contemplated by Rule 26(f).

21         As Megaupload candidly admits, its requested discovery "goes to the heart of the parties'

22  dispute" (*id.* at 14).  It gives Megaupload an unjustified head start on conducting discovery into

23  the merits of the case, while Defendant would obtain no discovery at all from Megaupload until,

24  at a minimum, weeks after the Rule 26(f) conference.  Thus, for example, while Megaupload

25  seeks immediate discovery relating to the YouTube Agreement, Defendant will have no discovery

26  concerning Megaupload's purported agreements with various artists and celebrities appearing in

27  the Video.  Nor will Defendant have any discovery to test the veracity of Megaupload's claim that

28  it is a "responsible provider of file services," Megaupload TRO App. at 14 (Dkt. No. 5), and not,

- 16 -

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

1    as the USTR recently reported, a notorious market for piracy.  There is absolutely no reason why

2    discovery should not proceed in the ordinary course, since (for case management purposes) this is

3    an ordinary civil case.

4         Finally, permitting expedited discovery will upset the orderly, streamlined discovery

5    process contemplated by Rule 26(f).  The purposes of the early meet-and-confer process and Rule

6    26(f) discovery conference include "facilitat[ing] more meaningful and useful initial disclosures,"

7    "avoid[ing] later [discovery] difficulties or ease their resolution," particularly with respect to

8    "issues regarding electronically stored information," and identifying and resolving any early

9    disputes "relating to assertions of privilege or of protection" of "trial-preparation materials."  Fed.

10   R. Civ. Proc. 26 comments.  Megaupload entirely ignores these important objectives.  Defendant

11   "would be unduly prejudiced if" Megaupload "is permitted to request document production in

12   advance" of the Rule 26(f) conference, as the search for and production of "electronically stored

13   information" would be "conducted more effectively after the parties hold their Rule 26(f)

14   conference."  *Hansen Beverage Co. v. Innovation Ventures, LLC*, 2008 WL 3992353, at *2 (S.D.

15   Cal. Aug. 28, 2008).

16        If the Court, however, does order expedited discovery, then that has to be a two-way

17   street.  At a minimum, Defendant would be entitled to take expedited discovery regarding the

18   creation of the Video (including all consents and communications with those appearing in the

19   Video about the Video and its purpose); Megaupload's plans for displaying the Video, plans with

20   which Megaupload says have been incalculably interfered; and Megaupload's users and

21   prospective users whom Megaupload says it intended the Video to reach, and in particular

22   discovery to test the veracity of Megaupload's assertion that it intends for its services to be used

23   only for legitimate, non-infringing purposes.

24   **IV.    CONCLUSION**

25        For the foregoing reasons, Plaintiff's Motion should be denied.

26

27

28

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)

1   DATED: January 10, 2012         MUNGER, TOLLES & OLSON LLP

2                         By: */s/ Kelly M. Klaus*

3                            Kelly M. Klaus

4                         Attorneys for Defendant

5                         UNIVERSAL MUSIC GROUP, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPP. TO MOT. FOR EXPED. DISCOVERY
CASE NO. C-11-6216 CW (JSC)